ADAM L. BRAVERMAN
United States Attorney
RENEE GREEN
Illinois Bar No.: 6270798
Special Assistant U.S. Attorney
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6775
Fax: (619) 546-0510
Email: Renee.Green@usdoj.gov
Attorneys for the United States

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND LIDDY,<br><br>Defendant. | Case No.: 17CR02475-CAB<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE** |

COMES NOW the UNITED STATES OF AMERICA, by and through its counsel, Adam L. Braverman, United States Attorney, and Renee Green, Special Assistant United States Attorney, and respectfully submits the following Response in Opposition to Defendant's Supplemental Motion to Suppress Evidence.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On June 26, 2018, the United States filed its Response in Opposition to Defendant's Motions to suppress statements, to suppress evidence, for discovery, and for an evidentiary hearing. Dkt. 54. A factual and procedural history of this matter was included by the United States in that filing and is incorporated herein, but not repeated.

On July 5, 2018, Defendant filed an unopposed motion to set a new briefing schedule and continue the motion hearing in order to file additional motions related to the recent Supreme Court decision in <u>Carpenter v. U.S.</u>, 138 S.Ct. 2206 (2018). Dkt. 58. On July 6, 2018, the court granted Defendant's motion. Dkt. 59. Defendant was ordered to file his supplemental motion to suppress, limited to the <u>Carpenter</u> issues, by July 20, 2018, the United States was ordered to file its response to the supplemental motion by August 3, 2018, and Defendant was ordered to file his reply on all motions by August 17, 2018. <u>Id</u>. The motion hearing is set for August 23, 2018. <u>Id</u>.

## II.

## <u>DISCUSSION</u>

The United States lawfully served administrative subpoenas, issued under 18 U.S.C. § 3486, to obtain Defendant's internet account subscriber information from his electronic service provider (ESP), in accordance with the Stored Communications Act (SCA), 18 U.S.C. § 2703(c)(2). In doing so, the United States acted according to explicit statutory authority and legal precedent, which clearly established there was no legitimate expectation of privacy in account information voluntarily shared with third parties and no associated search warrant requirement. The Supreme Court decision in <u>Carpenter</u> did not change the legal standard required for the Government to acquire such account subscriber information and has no effect on this case. As such, the evidence obtained pursuant to the administrative subpoenas was lawfully obtained and properly included as evidence to support the issuance of search warrants in this case.

Even if the court were to find that the <u>Carpenter</u> decision elevated the expectation of privacy in account subscriber information such that a showing of probable cause is required, Defendant does not have standing to raise the issue here and, even if he did, the good faith doctrine prevents the suppression of such evidence in this case. As stated above, the Government acted according to statutory authority and clearly established legal precedent at the time of the issuance of the administrative subpoenas and search

warrants in this case. Thus, suppression of the evidence is not the appropriate remedy, as it would not serve to deter unlawful conduct by the Government.

Defendant's supplemental motion to suppress evidence, pursuant to the decision in Carpenter, should be denied.

## A. INTERNET ACCOUNT SUBSCRIBER INFORMATION IS NOT PROTECTED BY THE FOURTH AMENDMENT

The Fourth Amendment provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. Camara v. Mun. Court of City & Cnty. of San Francisco, 387 U.S. 523, 528 (1967).

Recently, the Supreme Court addressed the issue of Fourth Amendment protection in Carpenter v. U.S., 138 S.Ct. at 2213, as follows:

> For much of our history, Fourth Amendment search doctrine was "tied to common-law trespass" and focused on whether the Government "obtains information by physically intruding on a constitutionally protected area." United States v. Jones, 565 U.S. 400, 405, 406, n. 3, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012). More recently, the Court has recognized that "property rights are not the sole measure of Fourth Amendment violations." Soldal v. Cook County, 506 U.S. 56, 64, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). In Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), we established that "the Fourth Amendment protects people, not places," and expanded our conception of the Amendment to protect certain expectations of privacy as well. When an individual "seeks to preserve something as private," and his expectation of privacy is "one that society is prepared to recognize as reasonable," we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause. Smith [v. Maryland], 442 U.S. [735], at 740, 99 S.Ct. 2577 [1979] (internal quotation marks and alterations omitted).

Prior to Carpenter, it was well established that there was no expectation of privacy, and no Fourth Amendment protection, for subscriber information provided to an internet provider. For example, the Tenth Circuit in U.S. v. Perrine, 518 F.3d 1196, 1204–05 (10th Cir. 2008), stated as follows:

> Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation. See, e.g., Guest v. Leis, 255 F.3d 325, 336 (6th Cir.2001) (holding, in a non-criminal context, that "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person-the system operator"); United States v. Hambrick, 225 F.3d 656 (4th Cir.2000) (unpublished), affirming United States v. Hambrick, 55 F.Supp.2d 504, 508–09 (W.D.Va.1999) (holding that there was no legitimate expectation of privacy in noncontent customer information provided to an internet service provider by one of its customers); United States v. D'Andrea, 497 F.Supp.2d 117, 120 (D.Mass.2007) ("The Smith line of cases has led federal courts to uniformly conclude that internet users have no reasonable expectation of privacy in their subscriber information, the length of their stored files, and other noncontent data to which service providers must have access."); Freedman v. America Online, Inc., 412 F.Supp.2d 174, 181 (D.Conn.2005) ("In the cases in which the issue has been considered, courts have universally found that, for purposes of the Fourth Amendment, a subscriber does not maintain a reasonable expectation of privacy with respect to his subscriber information."); United States v. Sherr, 400 F.Supp.2d 843, 848 (D.Md.2005) ("The courts that have already addressed this issue ... uniformly have found that individuals have no Fourth Amendment privacy interest in subscriber information given to an ISP."); United States v. Cox, 190 F.Supp.2d 330, 332 (N.D.N.Y.2002) (same); United States v. Kennedy, 81 F.Supp.2d 1103, 1110 (D.Kan.2000) ("Defendant's constitutional rights were not violated when [internet provider] divulged his subscriber information to the government. Defendant has not demonstrated an objectively reasonable legitimate expectation of privacy in his subscriber information."). Cf. United States v. Forrester, 512 F.3d 500, 510 (9th Cir.2008) ("e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir.2004) ("Individuals generally

possess a reasonable expectation of privacy in their home computers.... They may not, however, enjoy such an expectation of privacy in transmissions over the Internet or e-mail that have already arrived at the recipient.").

The litany of cases evaluating whether account subscriber information was protected by the Fourth Amendment relied primarily on the Supreme Court decisions in U.S. v. Miller, 425 U.S. 435 (1976), and Smith v. Maryland, 442 U.S. 735 (1979). Not surprisingly, the Supreme Court also considered Miller and Smith in reaching its findings in its latest decision addressing the scope of the Fourth Amendment and an individual's expectation of privacy in data detailing their historical physical movements and locations (Carpenter).

      1.    Third Party Doctrine Established in *Miller* and *Smith*

As mentioned above, the third party doctrine related to business records has been upheld in a long line of cases that follow the Supreme Court's holdings in two primary cases, Miller and Smith. In Miller, a criminal tax evasion case, the Government subpoenaed the defendant's banks for months of canceled checks, deposit slips, and monthly statements. In denying the defendant's Fourth Amendment challenge to the records collection, the Court found that the defendant could "assert neither ownership nor possession" of the documents, as they were "business records of the banks." Miller, 425 U.S. at 440. In addition, the Court found that the nature of the records confirmed the defendant's limited expectation of privacy because, for example, the checks were negotiable instruments to be used in commercial transactions and the bank statements contained information exposed to bank employees in the ordinary course of business. Id. at 442. Thus, the Court determined that the defendant had taken the risk that the information would be conveyed to the Government by revealing his affairs to a third-party business. Id. at 443.

Similarly, three years later in Smith, the Court applied the same principles in the context of information conveyed to a telephone company. In Smith, the Court determined that the Government's use of a pen register, which recorded outgoing phone

numbers dialed on a landline telephone, was not a search and no warrant was required. Noting the limited capabilities of the pen register, the Court expressed its doubt that people, in general, entertain any actual expectation of privacy in the telephone numbers they dial. <u>Smith</u>, 442 U.S. at 742. The Court pointed out that people know the numbers they dial are used by the telephone company "for a variety of legitimate business purposes," including routing telephone calls. <u>Id</u>. at 743. The Court further explained that if a person did have such a subjective expectation of privacy, it "is not one that society is prepared to recognize as reasonable." <u>Id</u>. (internal quotation marks omitted). The Court found that when the defendant dialed the outgoing telephone numbers, he voluntarily conveyed them to the telephone company by exposing the numbers to the company's equipment in the ordinary course of business. <u>Id</u>. at 744. Again, the Court held that the defendant had "assumed the risk" that the third party company's records would be divulged to the Government. <u>Id</u>.

Thus, the Supreme Court established that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." <u>Smith</u>, 442 U.S. at 743-44. Furthermore, the Court determined that principle remained true "even if the information is revealed on the assumption that it will be used only for a limited purpose." Miller, 425 U.S. at 443. As a result of the third party doctrine, "the Government is typically free to obtain such information from the recipient without triggering Fourth Amendment protections." <u>Carpenter</u>, 138 S.Ct. at 2216.

2.   <u>Carpenter</u> and Expectation of Privacy in Cell-Site Location Information

Approximately forty years after <u>Miller</u> and <u>Smith</u>, the Supreme Court held that an individual maintains a legitimate expectation of privacy, for Fourth Amendment purposes, in the record of his physical movements captured through cell-site location information (CSLI), despite the individual's disclosure of that information to his wireless carrier. <u>Carpenter</u>, 138 S.Ct. at 2217. As noted above, this was a departure from the Supreme Court's well-established third-party doctrine regarding business records and, as such, the Court explained its reasoning in some detail. In reaching its finding,

the Court described two lines of cases, which informed its understanding of the privacy interests at stake. Id. at 2214-15. The first set of cases addressed a person's expectation of privacy in his physical location and movements. Id. (discussing U.S. v. Knotts, 460 U.S. 276 (1983) (holding that visual surveillance augmented by a "beeper" signal did not constitute a search because a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movement from one place to another); U.S. v. Jones, 565 U.S. 400 (2012) (holding that the Government trespassed on the defendant's vehicle by placing a remotely-monitored tracking device on it and following the vehicle's movements for 28 days)).

In the second line of cases, the Court recognized that it had drawn a line between what a person keeps to himself and what he shares with others, particularly discussing Miller and Smith. 138 S.Ct. at 2216. The third-party doctrine established in these cases, and followed by the long line of cases described by the Tenth Circuit in Perrine, is the framework supporting the legal premise that there is no expectation of privacy, and no Fourth Amendment protection, for subscriber information provided to an internet provider.

In discussing the first line of cases, the Carpenter Court specifically mentioned opinions expressed by the concurring Justices in Jones that since GPS monitoring tracked "every movement" of the person in a vehicle, longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy regardless of whether the movements were disclosed to the public at large. Id. at 2215. For the majority in Carpenter, this distinction appeared to be very meaningful, as the Court focused a great deal on how cellular phones are a "pervasive and insistent part of daily life," how CSLI is created without any "affirmative act" on the part of the user, and how CSLI is a "detailed chronicle of a person's physical presence compiled every day, every moment, over several years." Id. at 2220. The Court distinguished CSLI records as "an entirely different species of business record," id. at 2222, and held that the Government's acquisition of the CSLI records was a search. Id. at 2223. ("In light of

the deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach, and the inescapable and automatic nature of its collection, the fact that such information is gathered by a third party does not make it any less deserving of Fourth Amendment protection.") In this manner, the Court distinguished CSLI from other business records typically sought in the second line of cases (under <u>Miller</u> and <u>Smith</u>), wherein the third-party doctrine had traditionally applied and the records were not subject to Fourth Amendment protection.

Acknowledging that the business records were of a "unique nature" in <u>Carpenter</u>, the Court described their decision as "a narrow one." <u>Id</u>. at 2220. The Court framed the question they were faced with regarding CSLI as a new category of cases, as follows:

> The question we confront today is how to apply the Fourth Amendment to a new phenomenon: the ability to chronicle a person's past movements through the record of his cell phone signals. Such tracking partakes of many of the qualities of the GPS monitoring we considered in <u>Jones</u>. Much like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled.

> At the same time, the fact that the individual continuously reveals his location to his wireless carrier implicates the third-party principle of <u>Smith</u> and <u>Miller</u>. But while the third-party doctrine applies to telephone numbers and bank records, it is not clear whether its logic extends to the qualitatively different category of cell-site records. After all, when <u>Smith</u> was decided in 1979, few could have imagined a society in which a phone goes wherever its owner goes, conveying to the wireless carrier not just dialed digits, but a detailed and comprehensive record of the person's movements.

> We decline to extend <u>Smith</u> and <u>Miller</u> to cover these novel circumstances.

<u>Id</u>. at 2216-17. In so doing, the Court affirmed that the third-party doctrine, as laid out in <u>Miller</u> and <u>Smith</u>, continues to apply to the conventional business records anticipated by the Court in those cases. <u>See id</u>. at 2220. ("We do not disturb the application of <u>Smith</u> and <u>Miller</u> or call into question conventional surveillance techniques and tools, such as

security cameras. Nor do we address other business records that might incidentally reveal location information.")

Of particular note, although the issue of obtaining account subscriber information was not before the Court in <u>Carpenter</u>, the Court further opined:

> This is certainly not to say that all orders compelling the production of documents will require a showing of probable cause. The Government will be able to use subpoenas to acquire records in the *overwhelming majority* of investigations. We hold only that a warrant is required in the *rare* case where the suspect has a *legitimate* privacy interest in records held by a third party.

<u>Id</u>. at 2222 (emphasis added).

> 3.   <u>Defendant's Arguments Regarding Expectation of Privacy in Account Subscriber Information Must Fail</u>

Since the Supreme Court's ruling in <u>Carpenter</u>, few courts have contemplated this issue, but no court has held that account subscriber information implicates the Fourth Amendment pursuant to the ruling in <u>Carpenter</u>. <u>See</u> <u>U.S. v. Tolbert</u>, 2018 WL 3611053, *8-9 (D.NM July 27, 2018) (account subscriber and IP address information sought from ESPs was more akin to bank and telephone records in <u>Miller</u> and <u>Smith</u> than the comprehensive, detailed, and long-term location information in <u>Carpenter</u>, thus law enforcement was not required to obtain the records via search warrant; "The privacy interest in this type of identifying data, which presumably any [ESP] employee could access during the regular course of business, simply does not rise to the level of the evidence in <u>Carpenter</u> such that it would require law enforcement to obtain a search warrant."); <u>see also</u>, <u>U.S. v. Westley</u>, 2018 WL 3448161, *14, n. 9 (D.CT July 17, 2018) (citing cases holding that defendants lack a reasonable expectation of privacy in their subscriber information and specifically declining to find that Facebook account subscriber information implicated the privacy concerns raised in <u>Carpenter</u>).

Similar to the defendants in <u>Tolbert</u> and <u>Westley</u>, Defendant argues that his account subscriber information and IP addresses are protected under the Fourth

1   Amendment, and may only be obtained via search warrant, either because he had a

2   reasonable expectation of privacy in the information or a legitimate property interest in

3   the information. However, Defendant's arguments have no basis in established law. As

4   the district court in Connecticut wrote regarding almost identical arguments raised in

5   Tolbert, "[the defendant] attempts to stretch Carpenter too far." Tolbert, 2018 WL

6   3611053, at *8.

7          Although Defendant argues he has a reasonable expectation of privacy in his

8   internet account subscriber information, in his words "the connection between his

9   location at home and his IP address," the law does not support this argument. As

10  described above, it has long been held that individuals have no reasonable expectation

11  of privacy in account subscriber information, or IP addresses, that the individual has

12  voluntarily shared with a third party ESP in order to facilitate communication. See

13  Forrester, 512 F.3d at 510; Perrine, 518 F.3d at 1204–05, *et al*. That remains true even

14  if the information is revealed on the assumption that it will be used only for a limited

15  purpose. Carpenter, 138 S.Ct. at 2216 (citing Miller, 425 U.S. at 443) (quotations

16  removed). In addition, the Carpenter Court was explicit that its holding was a "narrow

17  one" related to records of CSLI, and that Miller and Smith remain controlling precedent

18  with regard to traditional business records, such as the ones at issue in this case. Id. at

19  2220. The IP address and account subscriber information sought, and subsequently

20  received, pursuant to the administrative subpoenas did not contain information that was

21  deeply revealing, the information did not have the depth, breadth, and comprehensive

22  reach associated with CSLI, and it was not collected in an inescapable and automatic

23  nature. Nor did the information received in response to the subpoenas in this case reveal

24  any information regarding Defendant's historical locations or physical movements,

25  either current or historical, which raised similar privacy implications to the information

26  sought in Carpenter.[1] Under Miller and Smith, and their progeny, Defendant did not

27
28
_____

[1] In fact, the responses to the administrative subpoenas provided no information whatsoever about Defendant Raymond Liddy. The responses provided information indicating that the queried IP addresses had been assigned at the relevant time to the subscriber "Courtney Liddy" at a residential address. The responses did not associate Defendant's name with the IP

10

have a reasonable expectation of privacy in the account subscriber information (including IP addresses and residential service information) that was voluntarily shared with a third party ESP. Thus, the Government was free to obtain such information from the ESP without triggering Fourth Amendment protections. See Carpenter, 138 S.Ct. at 2216.

Defendant further states he was entitled to Fourth Amendment protection of his account subscriber information under a vague property rights theory. Although Defendant cites general principles of property law and bailment, referencing Justice Gorsuch's dissenting opinion in Carpenter, Defendant does nothing more than provide a cursory mention of the legal construct. Defendant did not provide any analysis of specific property rights endowed to him by federal or state statute or jurisprudence, such that the United States could respond to his arguments or this court could meaningfully weigh the arguments and reach a legal conclusion. Thus, Defendant's argument in this regard is forfeited. Additionally, there is no support in Carpenter for the argument that defendants have a property right in account subscriber information, such that any such challenge could be upheld pursuant to this motion.

Since the account subscriber information sought by the Government was not subject to Fourth Amendment protection, a search warrant was not required to obtain the information. As such, the information received in response to the Government's administrative subpoenas was lawfully obtained and appropriately included in the search warrants that followed. No evidence should be suppressed or redacted from the search warrant affidavits, which continue to contain information sufficient for a finding of probable cause in this case.

---

address or the residential address, nor did the subpoena responses indicate Defendant's presence at the residential address at any time. See Def. Supp. Mot. to Suppress, Exh. C. As such, if this court determines that a constitutional issue is implicated in this matter, any expectation of privacy would fall only with the named subscriber, not Defendant. Thus, Defendant does not have standing to bring a constitutional argument before this court. If the court determines that a constitutional issue is implicated, the United States requests the opportunity to provide further briefing on the issue of standing.

**B. IF THE COURT FINDS A FOURTH AMENDMENT VIOLATION, THE GOOD FAITH EXCEPTION APPLIES IN THIS CASE**

Even if this Court should find merit in any of Defendant's supplemental arguments for suppression of evidence, the United States would request the court deny Defendant's supplemental motion to suppress evidence because the individuals who served the administrative subpoenas and executed the search warrants did so in good faith.

As the Supreme Court found in U.S. v. Leon, the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion. 468 U.S. 897, 922 (1984). Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. Id. (citing Illinois v. Gates, 462 U.S. 213, 267 (1983) (WHITE, J., concurring in judgment); U.S. v. Ross, 456 U.S. 798, 823, n.32 (1982)). Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable. Id. (citing Harlow v. Fitzgerald, 457 U.S. 800, 815–819 (1982)). In addition, the Supreme Court later found that the exclusionary rule does not apply to suppress evidence when the Government obtained the evidence while acting in objectively reasonable reliance on a statute that was subsequently declared unconstitutional. Illinois v. Krull, 480 U.S. 340, 349-53 (1987) ("If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.").

There is no dispute that the third party doctrine of Miller and Smith controlled the acquisition of business records by the Government prior to the decision in Carpenter, and the Supreme Court clearly indicated as much. 138 S.Ct. at 2216. In the Ninth

Circuit, <u>Forrester</u> remains controlling law on the use of administrative subpoenas to obtain internet account subscriber information. There, the Ninth Circuit concluded that "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information." <u>Forrester</u>, 512 F.3d at 510.

While <u>Carpenter</u> did not address good faith, subsequent courts to consider the good faith exception in this context, even where CSLI was involved, have found that the exception to the exclusionary rule applied. <u>See</u> <u>U.S. v. Chavez</u>, 894 F.3d 593, 608 (4th Cir. 2018) (holding that, while <u>Carpenter</u> is controlling going forward, the Government reasonably relied on court orders and the SCA to obtain CSLI at the time and the good faith exception to the exclusionary rule applied); <u>U.S. v. Chavez</u>, 2018 WL 3145706, *6 (N.D.CA June 26, 2018) (applying good faith exception where the record was too incomplete to determine if <u>Carpenter</u> was implicated and finding no binding authority from the Ninth Circuit or Supreme Court related to whether use of a court order under the SCA to obtain CSLI was unlawful in June 2011); <u>U.S. v. Williams</u>, 2018 WL 3659585, *2-3 (E.D.MI August 2, 2018) (applying the good faith exception where the Government obtained CSLI via SCA orders in July 2017, when no clearly established law required a search warrant and <u>Carpenter</u> was pending before the Supreme Court); <u>U.S. v. Rojas-Reyes</u>, 2018 WL 3439092, *3-4 (S.D.IN July 17, 2018) (holding that the good faith exception applied where the Government used orders under the SCA to obtain CSLI records in July 2016 and no precedent required issuance of a search warrant); <u>see also</u> <u>U.S. v. Shultz</u>, 2018 WL 534333, *2, n.9 (D.KS January 24, 2018) (noting that even if <u>Smith</u> was overturned by <u>Carpenter</u> (pending before the Supreme Court at the time), the Government acted in good faith based on the law as it existed in 2016 in seeking subscriber information from ESPs via administrative subpoena).

The administrative subpoenas seeking account subscriber information in this case were lawfully served and the information received therefrom was lawfully obtained. Even if the court finds that <u>Smith</u> and its progeny were overturned by <u>Carpenter</u>, the individuals who served the administrative subpoenas in this case were acting in objectively reasonable reliance on the law, as it indisputably existed in early 2017. There is no allegation that the administrative subpoenas in this case, as authorized by 18 U.S.C. § 3486, were not properly served or that the subpoenas sought information not authorized under the Stored Communications Act (SCA), 18 U.S.C. § 2703(c)(2). There is also no allegation that the information received by the Government as a result of those subpoenas was unresponsive or beyond the scope of what the law permits. Thus, there is nothing to suggest that the information was obtained unlawfully under the SCA or Section 3486, or binding legal authority, as existing in early 2017.

In addition, the agents who later obtained and executed search warrants in this investigation objectively and reasonably relied on the information obtained from the administrative subpoenas, as well as the presumed validity of the search warrants that followed. There is no allegation of deliberate, reckless, or grossly negligent disregard toward Defendant's Fourth Amendment rights by the Government here, such that suppression of evidence would promote deterrence. <u>See</u> <u>Davis v. U.S.</u>, 564 U.S. 229, 238 (2011). Nor would law enforcement be deterred by suppression of evidence now, when they were compliant with statutory authority at the time. Thus, even if the court were to determine that the issuance of subpoenas for account subscriber information was unconstitutional, suppression of evidence is not the proper remedy. Even if the court were to find a constitutional violation in this case, the court should deny Defendant's motion to suppress based on the good faith doctrine.

//

//

//

//

## III.

## **CONCLUSION**

For the reasons stated above, the United States respectfully requests that this Court deny Defendant's Supplemental Motion to Suppress.

DATED: August 3, 2018                         Respectfully submitted,

                                              ADAM L. BRAVERMAN
                                              United States Attorney

                                              /s/ Renee Green
                                              RENEE GREEN
                                              Special Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 17CR02475-CAB |
| Plaintiff, | |
| v. | |
| RAYMOND LIDDY, | **CERTIFICATE OF SERVICE** |
| Defendant. | |

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and am not a party to the above-entitled action; that I served the following document: United States' Response in Opposition to Defendant's Supplemental Motion to Suppress Evidence, in the following manner: by electronically filing with the U.S. District Court for the Southern District of California using its ECF System.

DATED: August 3, 2018                    /s/ Renee Green
                                         RENEE GREEN
                                         Special Assistant U.S. Attorney