Knut S. Johnson (CSB 125725)
LAW OFFICE OF KNUT S. JOHNSON
550 West C Street, Suite 790
San Diego, California 92101
(619) 232-7080
knut@knutjohnson.com

Devin Burstein (CSB 255389)
WARREN & BURSTEIN
501 West Broadway, Suite 240
San Diego, California 92101
(619) 234-4433
db@wabulaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  17-cr-2475-CAB |
| Plaintiff, | Mr. Liddy's motion to compel discovery and for leave to file further motions |
| v. | |
| RAYMOND LIDDY, | Date: October 26, 2018 |
| Defendant. | Time: 11:00 a.m. |

**A.  Introduction.**

Mr. Liddy respectfully requests the Court compel the government to comply with its discovery obligations, and to grant him leave to file further briefing in support of his motion to suppress statements.

1

First, Mr. Liddy asks the Court to order the government to produce: (a) *all* audio recordings from the day of his arrest; (b) the original, computer forensic reports (e.g., Forensic Tool Kit, EnCase, etc.) with the contraband images removed; and (c) the full file listing in the .csv format.

(a).   The government has not yet produced all the recordings made during the search and interrogation of Mr. Liddy.  Instead, it has turned over a limited selection.   The defense believes there are likely recordings of Special Agent Dan Evans making improper comments about the investigation, which show his bias and potentially a motive for fabrication.[1] Additionally, the recordings will help demonstrate Mr. Liddy was not free to leave his home during the search.

(b).   The computer forensic reports are an important piece of the forensic evidence, which the government regularly provides in similar cases. Typically, a government forensic analyst reviews all of the data seized

---

[1] SA Evans has a history of improper conduct.  For instance, in *United States v. McElmurry*, 10-cr-5096-JAH, SA Evans improperly destroyed significant evidence – the defendant's computer allegedly containing child pornography – without notifying or obtaining the approval of an AUSA.  *See* Dckt. 78. Additionally, in the same case, during a search of the defendant's home, SA Evans ignored the defendant's invocation, called him "stupid," and then threatened to put his "mom in handcuffs" and "lock her up."  *See* Dckt. 73 at 4.  As a result, the government agreed not to use the defendant's statements during its case-in-chief.  *See* Dckt. 75 at 2 ("upon reflection, the United States has decided that it will not use any statements from the time of the Defendant's arrest for its case-in-chief.").

during a search warrant.  The relevant results are saved to what is commonly referred to as the Case Agent DVD.  The disc includes information that is material to Mr. Liddy's defense, including the metadata associated with the alleged contraband.  Computer forensic programs easily allow the forensic analyst to remove suspected contraband images.  Therefore, pursuant to Federal Rule of Criminal Procedure 16 and 18 U.S.C. § 3509(m), Mr. Liddy requests a copy of the Case Agent DVD without the alleged contraband images.

(c).  The file listing shows the computer path of all relevant files, which is necessary to determine how and where a file was stored/accessed on a given computer or hard drive.  When the forensic analyst reviewed Mr. Liddy's computer, he or she created a list of all files on the device. Mr. Liddy, therefore, requests a copy of this file in a .csv format.

Second, as to Mr. Liddy's request to file further briefing, the defense asks the Court's permission to file a supplemental pleading regarding statements taken in violation of *Miranda*.  Once the requested recordings are produced, Mr. Liddy will be able to give the Court a complete picture of the custodial nature of the interrogation.

**B.**    **Relevant facts.**

In the early morning hours of July 25, 2017, approximately fifteen agents from multiple agencies arrived at the Liddy residence.  B:250.[2]  Many were visibly armed and wearing bulletproof vests.  DEC at ¶¶ 3, 7, 16.[3]  Upon entry to the Liddy home, the agents controlled Mr. Liddy's movements.  DEC at ¶¶ 4-9, 12, 16, 17.  As explained in Mrs. Liddy's declaration, their actions created a "police-dominated atmosphere."  *United States v. Craighead*, 539 F.3d 1073, 1084 (9th Cir. 2008).

Additionally, from the outset, the agents planned not only to search the home, but also to interrogate Mr. Liddy.  To this end, they utilized an audio recorder during the search.  By the government's own admission: "During these recordings different investigators entered and left the room. The recording device was concealed in Special Agent Daniel P. Evans' binder and it was occasionally moved around to different locations. *The majority of the time* SA Evans and/or Supervisory Special Agent R. Joseph Rothrock remained with LIDDY *and the recording device*. The recordings include conversations about polygraph examinations, LIDDY's willingness to

---

[2] "B:" refers to the bates-stamped page of discovery.

[3] "DEC" is the declaration of Courtney Liddy, filed under seal.

4

voluntarily surrender his weapons, statements about his online activity, *and other topics*." B:236 (emphasis added).

Thus far, the government has turned over portions of the recording, but large sections are missing. Specifically, SA Evans said to another agent in Mrs. Liddy's presence, words to the effect that this case was going to be a "career changer." DEC at ¶ 14. Agents also made statements suggesting Mr. Liddy was not free to leave the house, such as limiting where he could go and what he could do. DEC at ¶ 11-12.

After the search, agents removed Mr. Liddy's computer from the home. The government took months to complete a forensic examination. As noted, however, despite repeated requests, it has still not produced all relevant discovery related to the examination.

## C.   Argument in support of motion to compel discovery.

The government misunderstands its discovery obligations. It claims, Mr. Liddy "is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case." Dckt. 20 at 3. This is wrong.

Pursuant to Federal Rule of Criminal Procedure 16, "defendants [have] a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Upon the defendant's request, the government "*must*" disclose all

"documents, data, [and] objects, . . . within the government's possession, custody, or control . . . [that are] material to *preparing* the defense[.]"  Fed. R. Crim. P. 16(a)(1)(E)(i) (emphasis added).

As the Ninth Circuit has repeatedly made clear, the government's Rule 16 discovery obligations extend to any information that might be "helpful" to preparing "a possible defense."  *See e.g.*, *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012).  This is a low threshold.  *See id.*  "Information that is not exculpatory or impeaching may still be relevant to developing a possible defense."  *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013).

"Even *inculpatory* evidence may be relevant. A defendant who knows that the government has evidence that renders his planned defense useless can alter his trial strategy.  Or he can seek a plea agreement instead of going to trial."  *Id.* (emphasis added); *see also United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) ("Even if the documents caused [the defendant] to completely abandon the [] defense and take an entirely different path, the documents would still have been 'material to preparing the defense' under Rule 16[.]").  Moreover, the "defendant needn't spell out his theory of the case in order to obtain discovery.  Nor is the government entitled to know in

advance specifically what the defense is going to be." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013).

Further, and particularly important here, "material to preparing the defense," is *not* limited to responding to the government's case-in-chief. *See United States v. Soto-Zuniga*, 837 F.3d 992, 1000-01 (9th Cir. 2016). Rather, under Rule 16 defense preparation includes information helpful to preparing a pretrial motion to suppress evidence. *See id*. ("Rule 16(a)(1)(E) permits discovery related to the constitutionality of a search or seizure.").

Here, as noted, the recordings made by SA Evans and other agents are material to the defense. First, they are relevant to a motion to suppress Mr. Liddy's statements made during the execution of the search warrant. The recordings will buttress Mr. Liddy's contention that, even before his formal arrest, the encounter was custodial. Specifically, they will help demonstrate that "a reasonable person [would] have felt he [] was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

Second, the recordings may provide admissible evidence showing SA Evans' bias. And under Rule 16, information is material whenever it "may assist [the defendant] in formulating a defense, including *leading to admissible evidence*." *Soto-Zuniga*, 837 F.3d at 1003 (emphasis added). To

this end, "'[i]f the evidence [] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt.'" *Stever*, 603 F.3d at 754 (internal citation omitted).

As to the computer forensic reports and the full file listing report, they are also material to defense preparations.  As noted, the government regularly produces this information in similar cases.  And there is no doubt that the government's forensic evaluation is equally critical here.  It will help illuminate whether there is any evidence Mr. Liddy *knowingly* possessed prohibited images, as opposed to such images existing in unallocated space. *See United States v. Flyer*, 633 F.3d 911, 919-20 (9th Cir. 2011) (files in unallocated space could "not support a conviction for knowing possession of child pornography").

## D.   Argument in support of motion for leave to file a further briefing in support of his motion to suppress.

Finally, at the last hearing, the parties and the Court discussed Mr. Liddy's intention to file further briefing in support of the motion to suppress his statements.  Before he can do so, however, Mr. Liddy needs the complete audio recordings, which will shed light on whether, "taking into account the totality of the circumstances, . . . a reasonable person in

[Mr. Liddy's] position would have felt deprived of his freedom of action in any significant way, such that he would not have felt free to terminate the interrogation." *Craighead*, 539 F.3d at 1082.   Accordingly, Mr. Liddy asks the Court's permission to file further briefing on this issue once he receives *all* relevant discovery.   Additionally, Mr. Liddy asks leave to file any further motions based on any misconduct the recordings may reveal.

## E.      Conclusion.

Mr. Liddy respectfully requests the Court grant his motion to compel discovery and for leave to file further briefing.

Dated: September 18, 2018          Respectfully submitted,

/s/ Devin Burstein

Devin Burstein
Knut S. Johnson
Attorneys for Mr. Liddy

**Proof of Service**

I, Devin Burstein, am not a party to the action. My business address is 501 West Broadway, Suite 240, San Diego, CA 92101.  On September 18, 2018, I served the above document on all parties via electronic delivery.

Dated: September 18, 2018                    /s/ *Devin Burstein*
                                            Devin Burstein